MILDRED TOBISCH v. LOUIS A. VILLAUME.
J. E. TOBISCH v. LOUIS A. VILLAUME.[1]

July 3, 1925.

Nos. 24,733, 24,734.

**Evidence insufficient to prove contributory negligence, as of law, of pedestrian struck by defendant's automobile.**

The evidence failed to establish, as a matter of law, negligence on the part of a pedestrian who was struck by an automobile while crossing a street in the daytime, who saw the automobile approaching, misjudged its speed and believed there was ample time to cross ahead of it.

· See Motor Vehicles, 28 Cyc. p. 49.

[1]Reported in 204 N. W. 568.

Two actions in the district court for Ramsey county. The cases were tried together before R. D. O'Brien, J., and a jury which returned verdicts in favor of plaintiffs. Defendant appealed from orders denying his motions for judgment notwithstanding the verdict or for a new trial. Affirmed.

*Willard Converse* and *Charles Converse*, for appellant.

*Gilbert E. Harris*, for respondents.

LEES, C.

These two cases grew out of an automobile accident. The first was brought by Mildred Tobisch, the young woman who was injured and the second by her father to recover expenses and loss of services, the accident having happened when Mildred was 17 years of age. After verdicts in favor of each plaintiff, defendant moved in the alternative for judgment or a new trial and appealed from orders denying the motions.

The single question presented is whether the evidence conclusively showed contributory negligence on the part of Mildred.

The accident happened on East Seventh street in the city of St. Paul on May 5th, 1921, between the hours of 12 and 1 p. m. Mildred had left her father's house to take a westbound street car. The house is located on the south side of Seventh street and about three blocks from Fauquier street. It was Mildred's intention to board the car at the corner of the two streets mentioned. She walked from the house to a point not quite opposite the corner where the car would stop and left the sidewalk, as she testified, to cross "not in a straight line but a slant line to the grocery store on the corner." As she started across the street she looked both ways and saw defendant's car about a block east of where she was, followed by the street car she intended to board. She testified that she thought she "could make it easily across the street before he would get up there." She did not know how fast defendant was driving. When she reached the second rail of the southerly car track, she looked again and saw defendant's car about "two houses away." She went on a little farther than the south rail of the north car track

and was struck down. She lost consciousness and could not tell how she was struck or by what portion of the car. She heard no warning signal and was unable to give any further account of the accident.

An eye witness, walking on the south side of Seventh street, testified that defendant was driving at a speed of 40 miles an hour, did not sound the horn and struck Mildred with the front left wheel and fender of his car. Another eye witness testified to the same effect, but estimated the speed of the car at 30 miles an hour. These witnesses would not say that the car was moving at that rate of speed immediately before the accident.

The defendant testified that he saw the girl when she started to cross the street; that she walked rapidly or ran across, did not slacken her speed at any time, but kept on until she ran against the left side of the car behind the driver's seat; that he sounded the horn repeatedly but she did not appear to notice it; that he was driving at a speed of 20 miles an hour, but when he was 10 or 15 feet from her he applied the brakes so forcibly that he locked the wheels of his car and caused it to skid, and that the girl was dragged about 8 feet. Her father examined the skid marks immediately after the accident and testified that they extended 50 feet back of the place where the car stood. Other witnesses, who had no interest in the outcome of the case, testified that the skid marks were 25 or 30 feet long.

In disposing of this appeal the evidence must be viewed in the light most favorable to plaintiffs, and in making the foregoing statement we have been mindful of the rule. When the evidence is so viewed, it would seem that the issue of contributory negligence was properly submitted to the jury. Defendant's counsel earnestly argue that it was not. They contend that only one conclusion can be drawn from Mildred's testimony, namely, that she was "day dreaming," momentarily oblivious of her surroundings and guilty of the "grossest and most unaccountable sort of negligence." We cannot agree to this. Mildred exercised her judgment in an attempt to estimate the speed of the car. She decided that she had time to

cross ahead of it. Presumably she had the degree of intelligence and caution of girls of her age and experience, and the usual instinct of self-preservation. The jury might well find that defendant was driving far too fast. Mildred was not required to anticipate negligence on his part. Stallman v. Shea, 99 Minn. 422, 109 N. W. 824. Evidently she underestimated the speed at which he was driving, but even experienced drivers are apt to err in the same way. It is not easy to determine the speed of an object approaching the observer. This court has said more than once that no one is justified in taking close chances when he sees a car bearing down on him at a street intersection. Whether that rule which is one of ordinary prudence has been observed is usually a jury question.

We think the evidence brings the case well within the doctrine of Quinn v. Heidman, 157 Minn. 129, 195 N. W. 774; Lundberg v. Zimmer, 159 Minn. 179, 198 N. W. 407; and Pach v. Chippewa Springs Corp. 161 Minn. 125, 201 N. W. 293, and that Mildred was not necessarily negligent in going across the street at a place other than the intersecting street crossing. Bolstad v. Armour & Co. 124 Minn. 155, 144 N. W. 462; Johnson v. Schuler, 152 Minn. 137, 188 N. W. 271.

Order affirmed.

Mr. Justice Holt took no part.